**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)**

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. **3:20-cv-00574-MHL** |
| | ) | |
| v. | ) | |
| | ) | |
| S & F LOGISTICS, LLC, and FERNANDO NAVIA, an individual. | ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiff, BMO Harris Bank N.A., by and through its attorneys, complains of Defendants, S & F Logistics, LLC and Fernando Navia, as follows:

### THE PARTIES

1. Plaintiff, BMO Harris Bank N.A. ("Plaintiff"), is a national banking association with its main office located in Chicago, Illinois, as set forth in its articles of association. For jurisdictional purposes, Plaintiff is a citizen of the State of Illinois.

2. Defendant, S & F Logistics, LLC ("S & F"), is a limited liability company organized under the laws of the Commonwealth of Virginia, with its principal place of business located at 16360 Industrial Drive, Milford, Virginia 22514. Upon information and belief, the sole member of S & F is Fernando Navia, who is a resident of the State of Virginia. For jurisdictional purposes, S & F is a citizen of the Commonwealth of Virginia. Navia is also the registered agent of S & F. The registered agent's address is 16360 Industrial Drive, Milford, Virginia 22514.

3. Defendant, Fernando Navia ("Navia" and together with S & F, "Borrowers"), is an individual residing at 94 Tacketts Mill Road, Stafford, Virginia 22556.

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a).

2. First, there is complete diversity of citizenship between the parties.

3. Next, as explained below, the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. Lastly, the Court may exercise personal jurisdiction over the Defendants. S & F is a company organized under Virginia law with its principal place of business in the Commonwealth. Navia is a resident of the Commonwealth of Virginia.

5. Venue is also proper in this Court under 28 U.S.C. § 1391(b). A substantial portion of the events or omissions giving rise to the claims set forth in this lawsuit occurred within territorial boundaries of the Eastern District of Virginia. Moreover, some or all of the collateral sought to be recovered pursuant to this Verified Complaint is based from a location in the Eastern District of Virginia.

## FACTUAL BACKGROUND
### The Agreements

6. On or about June 16, 2015, non-party General Electric Capital Corporation ("GECC") and Navia entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "First Agreement"), pursuant to which GECC financed Navia's purchase of the equipment described therein, and Navia agreed to repay GECC the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the First Agreement is attached hereto as "**Exhibit A**."

7. On or about October 23, 2015, non-party Transportation Truck and Trailer Solutions, LLC ("TTTS") and Navia entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Second

Agreement"), pursuant to which TTTS financed Navia's purchase of the equipment described therein, and Navia agreed to repay TTTS the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the Second Agreement is attached hereto as "**Exhibit B**."

8. On or about October 23, 2015, TTTS and Navia entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Third Agreement"), pursuant to which TTTS financed Navia's purchase of the equipment described therein, and Navia agreed to repay TTTS the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the Third Agreement is attached hereto as "**Exhibit C**."

9. On or about January 21, 2016, Plaintiff and S & F entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Fourth Agreement"), pursuant to which Plaintiff financed S & F's purchase of the equipment described therein, and S & F agreed to repay Plaintiff the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the Fourth Agreement is attached hereto as "**Exhibit D**."

10. On or about January 21, 2016, Plaintiff and S & F entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Fifth Agreement"), pursuant to which Plaintiff financed S & F's purchase of the equipment described therein, and S & F agreed to repay Plaintiff the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the Fifth Agreement is attached hereto as "**Exhibit E**."

11. On or about July 12, 2016, Plaintiff and S & F entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Sixth Agreement"), pursuant to which Plaintiff financed S & F's purchase of the equipment described therein, and S & F agreed to repay Plaintiff the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the Sixth Agreement is attached hereto as "**Exhibit F**."

12. On or about November 29, 2018, Plaintiff and S & F entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Seventh Agreement"), pursuant to which Plaintiff financed S & F's purchase of the equipment described therein, and S & F agreed to repay Plaintiff the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the Seventh Agreement is attached hereto as "**Exhibit G**."

13. On or about November 29, 2018, Plaintiff and S & F entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Eighth Agreement"), pursuant to which Plaintiff financed S & F's purchase of the equipment described therein, and S & F agreed to repay Plaintiff the amount set forth therein, with interest, pursuant to the terms thereof. A true and correct copy of the Eighth Agreement is attached hereto as "**Exhibit H**."

14. From time to time herein, the First Agreement, Second Agreement, and Third Agreement are described collectively as the "Navia Agreements."

15. From time to time herein, the Fourth Agreement, Fifth Agreement, Sixth Agreement, Seventh Agreement, and Eighth Agreement are described collectively as the "S & F Agreements."

16. From time to time herein, the First Agreement, Second Agreement, Third Agreement, Fourth Agreement, Fifth Agreement, Sixth Agreement, Seventh Agreement, and Eighth Agreement are described collectively as the "Agreements."

17. Pursuant to the Agreements, Borrowers granted Plaintiff a first-priority security interest in the equipment described in the respective Agreements, including all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto (collectively, the "Collateral"). In summary, the Collateral is described as follows:

| Year | Make | Model | Desc. | VIN |
|---|---|---|---|---|
| 2014 | Peterbilt | 389 Series | Tractor | 1XPXD49X3ED238787 |
| 2013 | Volvo | VNL Series | Tractor | 4V4NC9EJ9DN132691 |
| 2013 | Volvo | VNL Series | Tractor | 4V4NC9EJ2DN132693 |
| 2013 | Volvo | VNL Series | Tractor | 4V4NC9EHXDN135676 |
| 2015 | Fontaine | 48' Flatbed | Trailer | 13N148203F1568942 |
| 2015 | Fontaine | 48' Flatbed | Trailer | 13N148201F1568941 |
| 2015 | MAC | 48' Flatbed | Trailer | 5MAPA4824FA030574 |
| 2014 | Peterbilt | 389 Series | Tractor | 1XPXD49X4ED224560 |
| 2014 | Doonan | 53' Flatbed | Trailer | 1D9BG5322E1609555 |
| 2016 | East | 53' Flatbed | Trailer | 1E1H5Z280GR054855 |
| 2015 | Kenworth | W900 Series | Tractor | 1XKWD49X0FJ424470 |
| 2015 | Peterbilt | 579 Series | Tractor | 1XPBDP9X3FD267087 |
| 2015 | Peterbilt | 579 Series | Tractor | 1XPBDP9X5FD267088 |
| 2015 | Peterbilt | 579 Series | Tractor | 1XPBDP9X7FD267089 |
| 2015 | Peterbilt | 579 Series | Tractor | 1XPBDP9X3FD267090 |
| 2015 | Peterbilt | 579 Series | Tractor | 1XPBDP9X5FD267091 |
| 2018 | Great Dane | 48' Flatbed | Trailer | 1GRDM9626JH101572 |

18. Prior to filing this lawsuit, Plaintiff recovered possession of the unit of Collateral identified in the First Agreement as the 2014 Peterbilt Freightliner 389 Series tractor (VIN: 1XPXD49X3ED238787); the unit of Collateral identified in the Second Agreement as the 2013 Volvo VNL Series Tractor (VIN: 4V4NC9EHXDN135676); the unit of Collateral identified in the

Fourth Agreement as the 2014 Peterbilt Freightliner 389 Series tractor (VIN: 1XPXD49X4ED224560); the unit of Collateral identified in the Sixth Agreement as the 2015 Kenworth W900-Series tractor (VIN: 1XKWD49X0FJ424470); and the units of Collateral identified in the Seventh Agreement as the 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X3FD267087), 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X5FD267088), 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X7FD267089), 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X3FD267090), and 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X5FD267091).

19. Despite express demand, however, Borrowers are in possession of and have failed or refused to surrender the following units of Collateral:

| Year | Make | Model | Desc. | VIN |
|---|---|---|---|---|
| 2013 | Volvo | VNL Series | Tractor | 4V4NC9EJ9DN132691 |
| 2013 | Volvo | VNL Series | Tractor | 4V4NC9EJ2DN132693 |
| 2015 | Fontaine | 48' Flatbed | Trailer | 13N148203F1568942 |
| 2015 | Fontaine | 48' Flatbed | Trailer | 13N148201F1568941 |
| 2015 | MAC | 48' Flatbed | Trailer | 5MAPA4824FA030574 |
| 2014 | Doonan | 53' Flatbed | Trailer | 1D9BG5322E1609555 |
| 2016 | East | 53' Flatbed | Trailer | 1E1H5Z280GR054855 |
| 2018 | Great Dane | 48' Flatbed | Trailer | 1GRDM9626JH101572 |

(the "Retained Collateral").

20. Plaintiff properly perfected its security interest in the Retained Collateral by recording its liens on the Certificates of Title. True and Correct copies of the Certificates of Title for each unit of the Retained Collateral is attached hereto as "**Exhibit I**".

21. Effective October 1, 2015, GECC, either directly or indirectly, transferred and assigned to TTTS all of its rights, titles and interests in and to its accounts with Navia, including without limitation, the First Agreement and GECC's security interest in the Collateral. Thus,

6

TTTS is GECC's successor-in-interest with respect to all rights, claims, and interests related to Navia with respect to this action. A true and correct copy of the Assignment evidencing the assignment from GECC to TTTS is attached hereto as "**Exhibit J**."

22.     Effective December 1, 2015, TTTS, either directly or indirectly, transferred and assigned to Plaintiff all of its rights, titles and interests in and to its accounts with Navia, including without limitation, the Navia Agreements and TTTS's security interest in the Collateral.  Thus, Plaintiff is TTTS's successor-in-interest with respect to all rights, claims, and interests related to Navia with respect to this action. A true and correct copy of the Assignment evidencing the assignment from TTTS to Plaintiff is attached hereto as "**Exhibit K**."

23.     To induce Plaintiff into entering the S & F Agreements, Navia unconditionally guaranteed the present and future performance of S & F under the S & F Agreements (the "Guaranties").  True and correct copies of the Continuing Guaranties executed by Navia dated January 21, 2016, July 12, 2016, November 29, 2018, and November 29, 2018, evidencing the Guaranties are attached hereto as "**Exhibit L**."

24.     Under the terms and conditions of the Agreements and the Guaranties, the failure to make a payment when due is considered an event of default.

### Default Under the Agreements

25.     Borrowers are in default under the Agreements.

26.     Borrowers failed to make payments under the Agreements when those payments became due.

27.     More specifically, Navia failed to make the payment due under the First Agreement on January 20, 2020, the payment due under the Second Agreement on January 20, 2020, and the payment due under the Third Agreement on February 20, 2020.  S & F failed to make the payment

7

due under the Fourth Agreement on February 5, 2020, the payment due under the Fifth Agreement on January 20, 2020, the payment due under the Sixth Agreement on January 20, 2020, the payment due under the Seventh Agreement on February 1, 2020, and the payment due under the Eighth Agreement on February 1, 2020.

28. No subsequent payments were made and Borrowers' defaults under the Agreements are continuing.

29. Navia is also in default as guarantor under the Guaranties.

30. Navia failed to make payments under the S & F Agreements when those payments became due as required by the Guaranties. Navia's defaults under the Guaranties are continuing.

31. Because of Borrowers' defaults, Plaintiff elected to accelerate the amounts due and owing under the Agreements effective May 8, 2020.

32. Plaintiff notified Borrowers of their defaults and obligation to pay the accelerated and full amount due under the Agreements on May 20, 2020. True and correct copies of Plaintiff's Notice of Default and Acceleration to Borrowers and Notice of Default Respecting Guaranty to Navia dated May 20, 2020, are attached hereto as "**Exhibit M**."

33. Under the Agreements, upon acceleration, Borrowers are obligated to pay interest on all unpaid amounts at the rate of one and one-half percent (1 1/2%) per month or the maximum rate not prohibited by applicable law. Interest is calculated based on a 360-day year consisting of twelve 30-day months.

34. In addition, under the Agreements, Borrowers are obligated to pay late charges and other fees due under the Agreements.

35. In addition, under the Agreements, upon default, Borrowers are obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral.

36. In addition, under the Agreements, Borrowers are obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder, including this lawsuit.

37. Under the Guaranties, Navia is obligated to pay all amounts due and owing by S & F to Plaintiff under the S & F Agreements, without limitation.

38. Calculated as of May 8, 2020, the amount due and owing under the Navia Agreements, not including attorneys' fees and expenses or cost of collection, is an amount not less than $153,891.46.

39. Calculated as of May 8, 2020, the amount due and owing under the S & F Agreements, not including attorneys' fees and expenses or cost of collection, is an amount not less than $348,943.59.

40. Thus, the total amount owed under the Agreements, including accrued interest and fees, but not including attorney's fees and expenses or cost of collection, is an amount not less than $502,835.05.

41. Pursuant to the Agreements, upon the Borrowers' default thereunder, Borrowers are obligated to immediately turn over to Plaintiff possession of the Collateral.

42. Prior to the filing of this Complaint, Plaintiff recovered possession of the units of Collateral securing the Agreements described as the: 2014 Peterbilt 389 Series Trailer (VIN: 1XPXD49X3ED238787); 2013 Volvo VNL Series Tractor (VIN: 4V4NC9EHXDN135676); 2014 Peterbilt 389 Series Tractor (VIN: 1XPXD49X4ED224560); 2015 Kenworth W900-Series tractor (VIN: 1XKWD49X0FJ424470); 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X3FD267087); 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X5FD267088); 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X7FD267089); 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X3FD267090);

and 2015 Peterbilt 579 Series tractor (VIN: 1XPBDP9X5FD267091).  Plaintiff is currently in the process of determining the best means of mitigating its damages through the sale or other disposition of those units of Collateral.  The net proceeds obtained for those units of Collateral, if any, will be applied to reduce the total outstanding balance pursuant to the terms of the applicable Agreements.

43. Borrowers remain in possession of the Retained Collateral.

44. Despite express demand, Borrowers have failed or refused to return the Retained Collateral to Plaintiff.

45. The Agreements and Guaranties expressly provide that Plaintiff and Borrowers unconditionally waive their respective rights to a jury trial of any claim or cause of action relating thereto.

46. Plaintiff has performed any and all conditions and obligations required of it under the Agreements and the Guaranties.

## COUNT I
**(Injunctive Relief)**

47. Plaintiff incorporates and realleges all preceding paragraphs in this Count I.

48. Borrowers continue to possess and utilize, or are capable of utilizing, the Retained Collateral for commercial purposes.

49. On any given day the Retained Collateral is located, or is capable of being located, in diverse places throughout Virginia and surrounding states.

50. The Retained Collateral is used to transport goods across the country and may not be in any one location for any prolonged period of time.

51. The Retained Collateral depreciates and deteriorates as a result of its continued use by Borrowers, with no commensurate value being conferred to Plaintiff in the form of payments due and owing from Borrowers.

52. Borrowers have or should have in place capabilities to identify, locate, and surrender the Retained Collateral, which capabilities may now be breaking down.

53. Plaintiff will suffer irreparable injury for which no adequate remedy at law exists unless Borrowers and other persons and firms having knowledge of this injunction are: (a) enjoined from continuing to use the Retained Collateral; (b) ordered to advise Plaintiff of the location of the Retained Collateral; and (c) ordered to surrender the Retained Collateral to Plaintiff.

WHEREFORE, Plaintiff prays that:

a. Borrowers and other persons and firms having knowledge of the injunction, including without limitation the officers and directors of Borrowers having knowledge of the injunction, be temporarily, preliminarily, and permanently enjoined from using the Retained Collateral as of the date of entry of the injunction order;

b. Borrowers be ordered to disclose to Plaintiff the precise location of the Retained Collateral in order for Plaintiff to reclaim it;

c. Borrowers be ordered to recover the Retained Collateral in the hands of third parties for delivery to Plaintiff;

d. Borrowers be temporarily, preliminarily, and permanently enjoined from restricting access of Plaintiff to the Retained Collateral; and

e. Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT II
### (Specific Performance)

54. Plaintiff incorporates and realleges all preceding paragraphs in this Count II.

55. In the event of default by Borrowers under the Agreements, Borrowers are obligated to return the Retained Collateral at their expense to any location that Plaintiff directs.

56. In the event of default by Borrowers under the Agreements, Plaintiff is entitled to take possession of the Retained Collateral or direct Borrowers to remove it to a place deemed convenient by Plaintiff.

57. In the event of default by Borrowers under the Agreements, Plaintiff is entitled to repossess and remove the Retained Collateral, wherever located.

58. Plaintiff has performed its obligations under the Agreements, and is ready, willing, and able to perform under the Agreements.

59. Despite demand by Plaintiff, Borrowers have failed to cure their defaults under the Agreements and have failed to return the Retained Collateral.

WHEREFORE, Plaintiff prays that judgment be entered in Plaintiff's favor and against Borrowers, directing Borrowers to specifically perform their obligations under the Agreements, and to return and allow the removal of the Retained Collateral, and that Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT III
### (Breach of Contract against Borrower)

60. Plaintiff incorporates and realleges all preceding paragraphs in this Count III.

61. The Agreements are valid and fully enforceable contracts between Borrowers and Plaintiff.

62. Plaintiff has performed all terms and conditions to be performed by Plaintiff pursuant to the Agreements.

63. Borrowers have not performed all the terms and conditions to be performed by Borrowers pursuant to the Agreements and are in breach thereof.

64. Plaintiff has suffered damages due to Borrowers' breach.

65. Plaintiff is entitled to contractual money damages from Borrowers.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Borrowers in the amounts due under the Agreements, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

## COUNT IV
### (Breach of Guaranty against Navia)

66. Plaintiff incorporates and realleges all preceding paragraphs in this Count IV.

67. The Guaranties are valid and fully enforceable contracts between Navia and Plaintiff.

68. Plaintiff has performed all terms and conditions to be performed by Plaintiff pursuant to the Guaranties.

69. Navia has not performed all the terms and conditions to be performed by him pursuant to the Agreements and the Guaranties and is in breach thereof.

70. Plaintiff has suffered damages due to Navia's breach.

71. Plaintiff is entitled to contractual money damages from Navia.

WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor and against Navia in the amount due under the Agreements and the Guaranties, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

HB: 4828-9145-1072.6

## COUNT V
### (Detinue in the Alternative to other Counts)

72. Plaintiff incorporates and realleges all preceding paragraphs in this Count V.

73. Plaintiff states that it is entitled under Illinois and Texas law, which is applicable pursuant to the express agreement of the parties as set forth in the Agreements, to recover the Retained Collateral and to recover contract damages. To the extent this Court determines that pre-judgment relief to recover possession of the Collateral is not available under such laws or that Virginia law must be invoked in whole or in part to grant or facilitate the full relief requested, Plaintiff brings this Count in the alternative.

74. All requests for replevin under Virginia common law are now encompassed by Virginia Code § 8.01-114, the statue for detinue actions, as made applicable herein pursuant to Federal Rule of Civil Procedure 64.

75. Plaintiff and Borrowers entered into the Agreements, whereby Plaintiff financed Borrowers' purchase of the Collateral.

76. Plaintiff has a first-priority, perfected security interest in the Retained Collateral.

77. The fair market value of the Retained Collateral, based on the best knowledge, information and belief of Plaintiff, and in the absence of an inspection and assuming that the Retained Collateral is in immediately salable condition, and for purposes of setting a bond amount only, is approximately $141,300.

78. Borrowers failed to make payments as required by the Agreements and are in default.

79. Pursuant to the terms of the Agreements, because of Borrowers' defaults, Plaintiff is entitled to immediate possession of the Retained Collateral.

HB: 4828-9145-1072.6

80. Thus, pursuant to Va. Code § 8.01-114 *et seq.*, Plaintiff is entitled to an order granting it immediate possession of the Retained Collateral and to recover the same from Borrowers.

81. The Retained Collateral is wrongfully detained by Borrowers.

82. Upon information and belief, the Retained Collateral is based out of the following location: 16360 Industrial Drive, Milford, Virginia 22514. Given the mobile nature of the Retained Collateral, however, it is unlikely to be present at this location at any given time.

83. The Retained Collateral will materially decline in value between the time of filing of this Complaint and the time final judgment may be had; Plaintiff has a special interest in the Retained Collateral; and absent prejudgment relief there exists probable cause of Plaintiff losing the remedy unless the Court issues the writ.

84. The Retained Collateral has not been taken for a tax, assessment or fine; seized under a writ against the property of the Plaintiff.

85. Other than Plaintiff, no other party claims an interest in the Retained Collateral.

86. Given Borrowers' possession of the Collateral, it is within the Borrowers' power to conceal, waste, encumber, convert, convey, or remove the Retained Collateral from the jurisdiction of the Court, which would render Plaintiff's post-judgment remedy inadequate.

87. In the alternative to other Counts, Plaintiff seeks this relief as permissible intermediate relief under the Agreements, without waiving any and all other causes of action and rights it may have against Borrowers and/or other persons, all of which are reserved.

WHEREFORE, Plaintiff prays in the alternative to relief requested in other Counts to the complaint that this Court enter an Order of Possession in favor of Plaintiff, causing the surrender or repossession of the Retained Collateral.

Dated: July 29, 2020.

Respectfully submitted,

**BMO HARRIS BANK N.A.**

By: /s/ George E. Stewart

George E. Stewart (VSB No. 91097)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 378-2307
Facsimile: (202) 378-2319
george.stewart@huschblackwell.com

*Attorneys for BMO Harris Bank N.A.*

HB: 4828-9145-1072.6

## VERIFICATION

STATE OF IOWA )
) SS
COUNTY OF LINN )

I, Sheila Aschenbrenner, on oath state that:

1. I am employed by BMO Harris Bank N.A. ("Plaintiff"), as a Litigation Specialist and maintain an office at 3925 Fountains Dr. NE, Cedar Rapids, Iowa 52411.

2. Plaintiff is the owner of the accounts of S & F Logistics, LLC and Fernando Navia ("Borrowers"). I am authorized to make this Verification on behalf of Plaintiff.

3. I am charged with administering Plaintiff's accounts with Borrowers and am a custodian of the business records and credit files relating to the accounts of Borrowers with Plaintiff. I certify that such documentation is maintained by Plaintiff in the ordinary course of its business and as a regular practice.

4. I have read the foregoing Verified Complaint and based upon personal knowledge and the business records of Plaintiff verify that the facts stated in it are true.

I declare under penalty of perjury that the foregoing is true and correct.

*Sheila Aschenbrenner*
Sheila Aschenbrenner

HB: 4828-9145-1072.6