IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**BMO HARRIS BANK, N.A.,**

      **Plaintiff,**

    **v.**                            **Civil Action No. 3:20cv574**

**S & F LOGISTICS, LLC,** *et al.,*

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff BMO Harris Bank, N.A.'s ("BMO")

Motion for Summary Judgment.[1]  (ECF No. 19.)  Defendants S & F Logistics, LLC ("S & F")

and Fernando Navia responded, (*see* ECF No. 22),[2] and BMO replied, (*see* ECF No. 23).

Accordingly, the matter is ripe for disposition.

The Court dispenses with oral argument because the materials before it adequately

present the facts and legal contentions, and argument would not aid the decisional process.  The

---

[1] BMO only moves for summary judgment on Counts I, III, and IV of the Verified
Complaint.  (ECF No. 20, at 18.)  However, Counts II and V are alternative requests for the
remedies of specific performance and detinue, which become moot given the Court's award of
the monetary damages and injunctive relief contained in Counts I, III, and IV.  Therefore, the
Court will consider the Motion for Summary Judgment as a full Motion for Summary Judgment
instead of a Partial Motion for Summary Judgment.

[2] Defendants' Response to BMO's Motion for Summary Judgment lacks substantive
argument because Navia and S & F have refused to communicate with their Counsel since
January 2021.  (*See* ECF No. 22, at 2–3; ECF No. 26; ECF No. 29.)  Because the Court has
placed both Defendants on notice that it intended to decide BMO's Motion for Summary
Judgment if neither defendant responded, and because neither Defendant did respond to the
Court's Orders, (ECF No. 26; ECF No. 29), the Court finds it appropriate to rule on the
substance of BMO's Motion for Summary Judgment without Defendants' substantive rebuttal.

Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[3]  For the reasons that follow, the

Court will grant the Motion for Summary Judgment as to Counts III and IV and will grant

BMO's request for injunctive relief.

## I.  Procedural History and Factual Background

### A.     Procedural History

On July 29, 2020, BMO filed the present suit via a Verified Complaint, raising five

counts against Defendants:

(1) Request for injunctive relief (Count I);

(2) Specific performance (Count II);

(3) Breach of contract (Count III);

(4) Breach of guaranty (Count IV); and,

(5) Detinue (Count V).

(ECF No. 1, ¶¶ 47–87.)  Defendants answered on August 26, 2020.  (*See* ECF Nos. 7, 8.)

On December 15, 2020, Defendants' Counsel Frank Bredimus moved to withdraw as

counsel for Defendants because "Defendants ha[d] failed to communicate effectively with [him]

thereby preventing [him] from continuing to represent their interests."  (ECF No. 17, at 1.)

However, the Court did not permit Mr. Bredimus to withdraw because "Defendants ha[d] not

retained substitute counsel and withdrawal of Defendants' only counsel of record would have

---

[3] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C. § 1332(a)(1).  BMO is a citizen of the State of Illinois, (ECF No. 20-1, ¶ 5), S & F is a citizen of the Commonwealth of Virginia, (ECF No. 8, ¶ 2), and Navia is a citizen of the Commonwealth of Virginia, (ECF No. 7, ¶ 3; ECF No. 20-1, ¶ 7).  BMO seeks damages in the amount of $377,407.77.  (ECF No. 20-1, ¶ 100.)

'disruptive impact' on the case." (ECF No. 18, at 2 (quoting *Diedrich v. City of Newport News*, No. 4:04cv9, 2004 WL 3436073, at *2 (E.D. Va. Nov. 29, 2004)).)

On March 19, 2021, BMO filed a Motion for Summary Judgment on Counts I, III and IV, seeking damages under all eight Agreements and injunctive relief under the Sixth[4] Agreement.[5]  In the Motion for Summary Judgment, BMO asks the Court to enter judgment in its favor as to Counts III and IV and find that Defendants breached the Agreements and Guaranties. (ECF No. 20, at 13–15.)  BMO requests damages in the amount of $337,407.77—the total comprising the principal loan amount, interest, expenses of repossessing the Collateral, and proceeds from the sale of the Collateral.  (ECF No. 20-1, ¶ 100.)  In addition, BMO requests that the Court order Defendants to pay future interest on the principal,[6] attorneys' fees, and other "costs incurred by Plaintiff in the enforcement of its rights under the Agreements, including this lawsuit."  (ECF No. 20-1, ¶¶ 48, 101.)  Finally, BMO asks that the Court grant injunctive relief and order Defendants to immediately surrender the Retained Collateral and enjoin them from using it.  (ECF No. 19; ECF No. 20, at 15.)

On April 2, 2021, Defendants' Counsel submitted a Response to the Motion for Summary Judgment.  (ECF No. 22.)  Counsel stated that "he [was] unable to file a substantive response to

---

[4] In its Motion for Summary Judgment, BMO states that the Retained Collateral "is subject to the Second Agreement."  (ECF No. 20, ¶ 31.)  However, the Retained collateral—VIN 1E1H5Z280GR054855—is the subject of the *Sixth* Agreement.  (ECF No. 1-6, at 2.)

[5] Count I is a request for injunctive relief and not a substantive claim in its own right. (*See* ECF No. 1, at 10.)  "While the claim for injunctive relief is set out as a separate cause of action, it is really nothing more than a form of possible relief that can be awarded once a party has prevailed on another cause of action."  *Housecalls Home Health Care, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 515 F. Supp. 2d 616, 627 n.6 (M.D.N.C. 2007).

[6] BMO avers that argues that after March 19, 2020, it is owed interest at the collective rate of $56.70 *per diem* for the first three Agreements and at the collective rate of $112.06 *per diem* for the remaining Agreements.  (ECF No. 20, ¶ 33.)

the Motion for Summary Judgment on Defendants' behalf" because Defendants had remained incommunicative.  (ECF No. 22, ¶ 10.)  In support, Counsel described his attempts to reach Defendants via letter, text message, and e-mail between November 2020 and April 2021, none of which resulted in substantive communication.  (ECF No. 22, ¶¶ 4–9.)  Counsel represents that "[t]he last communication Defendants' [C]ounsel received from Defendants was on January 29, 2021."  (ECF No. 22, ¶ 8.)

BMO replied on April 8, 2021.  (ECF No. 23.)  On April 9, 2021 BMO filed a corresponding Motion to Stay these proceedings "pending the Court's resolution of Plaintiff's [M]otion for [S]ummary [J]udgment."  (ECF No. 24, at 1.)  On January 6, 2022, the Court issued an Order "notif[ying] the parties that it is prepared to rule on the Motion [for Summary Judgment] and will consider granting a permanent injunction against S & F" without a hearing. (ECF No. 25, at 1.)  The Court gave S & F until January 17, 2022, to request a "hearing regarding permanent injunctive relief."  (ECF No. 25, at 1.)  The Court also allowed BMO to "file a statement . . . as to why it believes the Court has [] jurisdiction" to order "'any other persons or firms with control over the [subject property]'[1]—other than the Defendants in this action—to 'immediately surrender' or cease using the subject property."  (ECF No. 25, at 2.)

On January 14, 2022, Defendants' Counsel responded to the Court's January 6, 2022 Order.  (ECF No. 26.)  Counsel represented that:

> [s]ince the entry of the Order, Debtor's [C]ounsel attempted to contact Defendants by email and mail.  On January 6, 2022, Debtor's Counsel sent Defendants the Court's January 6, 2022 Order together with a letter to Defendants informing Defendants of the Court's Order and the January 17, 2022 deadline.  On January 10, 2022, Defendants' [C]ounsel sent the Order and letter to Defendants by Certified Mail, which were delivered to Defendants' last known address on January 12, 2022."

(ECF No. 26, ¶ 6.) Counsel "respectfully request[ed] that this Honorable Court grant such relief as it deems just and proper" given "Defendants' [C]ounsel's continued inability to communicate with Defendants and the lack of response from Defendants. (ECF No. 26, at 2.)

On January 20, 2022, BMO also responded to the Court's January 6, 2022 Order, "clarify[ing] the scope of its request for injunctive relief in its Motion for Summary Judgment." (ECF No. 27, at 1.) BMO represented that the language in its proposed order granting its Motion "inadvertently included language seeking to force any other persons besides Defendants with control over the subject property to immediately surrender or cease using the subject property." (ECF No. 27, at 1 (alteration omitted) (internal quotation marks omitted).) Plaintiff therefore submitted revised language that "comport[s]" with Fed. R. Civ. P. 65(d)(2)(C) to only "bind 'other persons who are in active concert or participation with' the Defendants." (ECF No. 27, at 1–2.)

On February 24, 2022, the Court issued an Order notifying Defendant Fernando Navia that it "is prepared to rule on BMO's Motion for Summary Judgment and will consider granting a permanent injunction against Navia" without a hearing. (ECF No. 28, at 1 (alterations omitted).) The Court gave Navia until March 3, 2022, to object. (ECF No. 28, at 1.) On March 3, 2022, Defendants' Counsel responded to the Court's February 24, 2022 Order. (ECF No. 29.) Defendant's Counsel again recounted that he "sent Defendants the Court's February 24, 2022 Order," but that "Defendants have not responded to" him, and that consequently, Counsel has been "unable to file a substantive response to the Court's [February 24] Order." (ECF No. 29, ¶¶ 8–9.)

### B.   Factual Background

### 1.   The Agreements and Guaranties[7]

From 2015 to 2018, Defendants entered into eight Security Agreements (the

"Agreements") with different entities to finance trucking equipment (the "Collateral").  Fernando

Navia, the sole member of S & F Logistics, LLC, entered into one Loan and Security Agreement

(the "First Agreement") with General Electric Capital Corporation ("GE"), (ECF No. 1-1), and

two Agreements (the "Second" and "Third" Agreements) with Transportation Truck and Trailer

Solutions, LLC ("TTTS"), (ECF No. 1-2; ECF No. 1-3; *see* ECF No. 1, ¶ 2; ECF No. 7, ¶ 2).

S & F, as an entity, then entered into five Loan and Security Agreements (the "Fourth," "Fifth,"

"Sixth," "Seventh," and "Eighth" Agreements) with BMO.  (ECF Nos. 1-4, 1-5, 1-6, 1-7, 1-8.)

Each of these eight Agreements granted the secured parties (GE, TTTS, or BMO) a first-priority

security interest in the trucking equipment described in the Agreement in exchange for financing

the machinery.  (ECF Nos. 1-1 to 1-8.)  Defendants financed eleven tractors and six trailers

through these eight Agreements.[8]  (ECF No. 20-1, at 7.)

Each Agreement provides that the loan is considered in default upon one failure to make

a loan payment.  (*E.g.*, ECF No. 1-1, ¶ 5.1.)  In the event of a default, the Agreements authorize

---

[7] In addition to finding its facts from BMO Litigation Specialist Sheila Aschenbrenner's
sworn declaration, the Court derives facts from the attested-to legal documents attached as the
thirteen exhibits to BMO's Verified Complaint.  (*See* ECF Nos. 1-1 to 1-13; *see also First
Century Bank, N.C. v. Batelic*, No. 1:11-0580, 2012 WL 3758238, at *2 (S.D.W. Va. Aug. 30,
2012) (granting summary judgment based in part on "the Bank's complaint and accompanying
exhibits").  In her sworn declaration, Aschenbrenner states that the exhibits attached to the
Verified Complaint are "true and correct cop[ies]" of the Agreements, (ECF Nos. 1-1 to 1-8); the
Guaranties, (ECF No. 1-12); the Certificates of Title to the Collateral, (ECF No. 1-9); and
BMO's default notice letters, (ECF No. 1-13).  (ECF No. 20-1, at 4–5, 7, 10.)  Aschenbrenner
also attests to the veracity of all relevant transfer agreements.  (ECF No 20-1, at 5; *see* ECF
No. 1-10; ECF No. 1-11.)

[8] Defendants expressly acknowledged their receipt of the Collateral equipment after
executing the Agreements.  (ECF No. 20-1, ¶ 21.)

the secured party "with or without notice to [Defendants,] . . . [to] declare indebtedness [under the Agreements] to be immediately due and payable." (ECF No. 1-1, ¶ 5.2.) The Agreements further authorize the secured party to "exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require [the debtor] to assemble the [collateral] and deliver it to [the secured party] at a place to be designated by" the secured party. (ECF No. 1-1, ¶ 5.2.) Finally, the Agreements obligate the debtor to pay interest, late charges, and expenses for retaking and selling the Collateral, as well attorneys' fees. (ECF No. 20-1, ¶ 40.) The First, Second, Third, Fourth, Fifth, and Sixth Agreements contain choice-of-law provisions designating Texas law as the governing law, (ECF Nos. 1-1, at 5; 1-2, at 5; 1-3, at 5; 1-4, at 5; 1-5, at 5; 1-6, at 5), while the Seventh and Eighth Agreements designate Illinois law as the governing law, (ECF Nos. 1-7, at 5; 1-8, at 5.)

On October 1, 2015, GE transferred to TTTS its "right, title, and interests in" the First Agreement. (ECF No. 1-10, at 2.) And on December 1, 2015, TTTS transferred *its* "right, title and interest in" under the First, Second, and Third Agreements to BMO. (ECF No. 1-11, at 2.) Thus, by 2015, BMO became the creditor of all eight Agreements.

In addition to the Agreements, Navia entered into four Continuing Guaranties with BMO. (ECF No. 1-12, at 2–5.) Through these Guaranties, BMO provided Navia "[v]aluable [c]onsideration, the receipt and sufficiency of which [Navia] acknowledged." (ECF No. 1-12, at 2–5). In return, Navia agreed that, "[i]f [S & F] fail[ed] to pay the indebtedness promptly as the same becomes due, or otherwise fail[ed] to perform any obligation under any of the [Fourth, Fifth, Sixth, Seventh, or Eighth] Agreements,"[9] Navia would "pay on demand the entire

---

[9] The Fourth through Eighth Agreements are the ones S & F originally entered into with BMO, as opposed to those Navia originally entered into with GE and TTTS.

indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by" BMO, and that he would "be bound by and to pay on demand any deficiency established by the sale of those Agreements or [Collateral]." (ECF No. 1-12, at 2–5.)

## 2. Defendants' Default and BMO's Efforts to Repossess the Collateral

Between January 20, 2020, and February 20, 2020, Defendants failed to make payments due under each of the eight Agreements. (ECF No. 20-1, ¶¶ 35–36.) They have not made any subsequent payments since defaulting. (ECF No. 20-1, ¶¶ 38.) On May 20, 2020, and again on June 19, 2020, BMO notified Defendants, "declar[ing] the entire indebtedness owed pursuant to the Loan Documents immediately due and payabale" because of Defendants' default. (ECF No. 20-1, ¶¶ 37, 40.)

BMO has since repossessed fifteen of the seventeen units of the Collateral covered under the Agreements. (ECF No. 20-1, ¶ 30.) BMO sold ten of the fifteen recovered units at the current market price using "a commercially reasonable manner." (ECF No. 20-1, ¶ 30.) BMO has yet to sell the remaining five units of Collateral. (ECF No. 20-1, at 12–20.) Of the two unrecovered Collateral units, BMO located one but ultimately deemed it "not cost effective to recover" it because it was "missing the engine and the transmission." (ECF No. 20-1, ¶ 28.) BMO avers that Defendants continue to possess the last remaining unit (the "Retained Collateral"), obtained through the Sixth Agreement, despite BMO's demand for the vehicle. (ECF No. 20-1, ¶ 29; *see* ECF No. 1-6, at 2.)

All told, BMO seeks $377,407.77 in damages. (ECF No. 20, ¶ 33.) To reach this figure, BMO calculated the amount due on the Agreements' principal, determined the proceeds obtained through reselling each piece of collateral, subtracted outstanding interest and fees from the

proceeds, subtracted the amount left from the proceeds from the principal, and added the interest due. (*See* ECF No. 20-1, ¶¶ 49–101.)

Additionally, BMO seeks an injunction ordering Defendants to cease using the Retained Collateral and to make it available for repossession.  (ECF No. 20, ¶¶ 34–37.)

## II.  Standard of Review: Rule 56 Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).

"A fact is material if the existence or non-existence thereof could lead a [finder of fact] to different resolutions of the case." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 628 (E.D. Va. 2016) (citing *Liberty Lobby*, 477 U.S. at 248).  Once a party has properly filed evidence supporting its motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24.  The parties must present these in the form of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255.  Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995) (citation omitted).  Nonetheless,

9

the nonmoving "party is entitled 'to have the credibility of his [or her] evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (*en banc*) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

In the end, the non-moving party must do more than present a scintilla of evidence in its favor.

> Rather, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable [finder of fact] to find the facts in his [or her] favor.

*Sylvia Dev. Corp.*, 48 F.3d at 818 (internal quotations, citations, and alterations omitted). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a [finder of fact] to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

## III. Analysis

Viewing the record as a whole and in the light most favorable to Defendants, the Court will grant the Motion for Summary Judgment as to Counts III and IV because Defendants failed to provide a substantive response to the Motion, and no dispute of material fact exists that would allow a reasonable juror to conclude that Defendants did not breach the Agreements and Guaranties. The Court will also grant BMO's request for injunctive relief under Count I because BMO has established that it will suffer irreparable damage without an injunction ordering Defendants to return or make available the Retained Collateral and that BMO has no adequate remedy at law. The Court will deny the remaining counts in BMO's Verified Complaint as moot in light of the relief fashioned by the Court.

**A.    The Court Will Grant the Motion for Summary Judgment on Counts III and IV Because No Genuine Issue of Material Fact Exists as to Whether the Defendants Breached the Agreements and Guaranties**

No genuine dispute of material fact exists as to whether Defendants breached the

Agreements and Guaranties under Texas or Illinois law.  Therefore, the Court will grant BMO

summary judgment on Counts III and IV. [10]

**1.    Legal Standard:  Breach of Contract Under Texas and Illinois Law**

To establish a claim for breach of contract in both Texas and Illinois, a plaintiff must

show: "(1) the existence of a valid contract; (2) performance . . . by the plaintiff; (3) breach of

the contract by the defendant; and, (4) damages [to] the plaintiff as a result of the breach." *Smith*

---

[10] The Court will apply Texas law to the First, Second, Third, Fourth, Fifth, and Sixth Agreements and Illinois law to the Seventh and Eighth Agreements pursuant to their choice-of-law provisions. (*See, e.g.*, ECF No. 1-1, ¶ 7.6; ECF No. 1-7, ¶ 7.6.)  Under Virginia's choice-of-law rules—which the Court applies because it is exercising diversity jurisdiction over this case—"courts generally enforce choice-of-law clauses 'unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power.'" *JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc.*, No. 3:15cv235, 2017 WL 4003026, at *8 (E.D. Va. Sept. 11, 2017) (Lauck, J.) (citation omitted).  Neither party in this case has objected, and thus, the Court will exercise the choice-of-law provisions in the Agreements.  However, because the elements for breach of contract are the same under Texas and Illinois law, the Court will analyze the breach of contract claims under all eight Agreements together.

The Guaranties, unlike the Agreements, do not feature a choice-of-law provision. However, the Court follows Virginia's choice-of-law rules, which direct the use of Texas and Illinois law to analyze breach of contract as to the Guaranties. *See id.* (stating that courts sitting in diversity apply forum state's choice-of-law rules).  Where a guaranty lacks a choice-of-law provision, it does not automatically incorporate the choice-of-law provision of the agreement that it guarantees. *See Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc.*, 958 F. Supp. 2d 623, 627 (W.D. Va. 2013).  In Virginia, the law of the place of performance governs issues relating to the breach of a contract. *See Equitable Tr. Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975) (citation omitted).  The Agreements provide that the loans are payable to BMO's address in Texas, (ECF Nos. 1-1 to 1-8), while BMO's May 20, 2020, Notice of Default Respecting Guaranty invites Defendants to remit the obligation to BMO's address in Illinois, (ECF No. 1-13, at 3).  Therefore, either Texas or Illinois law governs the alleged breach of the Guaranties.  The Court need not determine which of the two states' laws apply, as the substance of the states' laws are identical on the relevant issues.

*Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted); *see Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 529 (Ill. App. Ct. 1993). A plaintiff must also allege sufficient facts indicating the terms of the contract that the defendant breached. *See Morse v. Commonwealth Land Title Ins. Co.*, No. 4:12cv375, 2013 WL 5372395, at * 11 (E.D. Tex. Sept. 13, 2015) ("Without identification of the contract(s) at issue, the provisions breached, [the d]efendants' specific actions constituting breach, or the damages that resulted, a breach of contract claim has not been stated . . . ."); *Nielsen*, 612 N.E.2d at 529.

## 2.    <u>The Agreements and Guaranties are Valid Contracts</u>

The record shows that the Agreements and Guaranties are valid contracts. *See Smith Int'l, Inc.*, 490 F.3d at 387 (citation omitted) (stating that a valid contract is an "essential element[] of a breach of contract action"); *Nielsen*, 612 N.E.2d at 529 (same). Under both Illinois and Texas Law, a security interest is valid and enforceable when: (1) the debtor signs a security agreement that contains a description of the collateral, (2) value has been given, and (3) the debtor has rights in the collateral. *See* 810 Ill. Comp. Stat. 5/9-203(b); Tex. Bus. & Com. Code § 9.203(b); *see Citizens State Bank of Lena v. Diemer*, 494 N.E.2d 1224, 1226 (Ill. App. Ct. 1986).

The Agreements satisfy all three prongs. First, the respective debtor signed each one of these contracts, and the contracts contained a clear description of the collateral involved. Navia signed one Agreement with GE and two Agreements with TTTS. (ECF Nos. 1-1 to 1-3, at 6.) S & F signed the remaining five Agreements with BMO. (ECF Nos. 1-4 to 1-8, at 6.) And each listed the year, manufacturer, model, and serial number of the specific collateral equipment. (ECF Nos. 1-1 to 1-8, at 2.) Second, the creditors provided the respective Defendants with value by financing the Defendants' purchases of the collateral trucking equipment. (ECF Nos. 1-1 to

1-8, at 3.)  Finally, the respective Defendants retained rights in the collateral through title and possession.  (ECF No. 1-9, at 2–17); *see Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 649 N.E.2d 511, 516 (Ill. App. Ct. 1995) (noting that rights in the collateral are sufficient if "the debtor has possession and title to the goods").  GE then transferred to TTTS its "right, title and interests" in its one agreement with Navia, (ECF No. 1-10, at 2), and TTTS later transferred to BMO its "right[s], title, and interest in" its three Agreements with Navia, (ECF No. 1-11, at 2).

The Guaranties are also valid contracts.  For a contract to be valid, Texas and Illinois law require "an offer, acceptance, and consideration." *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App. 2008) (citation omitted); *accord All Am. Roofing, Inc. v. Zurich Am. Ins.*, 934 N.E.2d 679, 689 (Ill. App. Ct. 2010) (citation omitted).  Here, Navia signed and entered into Guaranty contracts with BMO.  (ECF No. 20-1, ¶ 9(i); ECF No. 1-12, at 2–5.)  The Defendants do not dispute the validity of the Guaranties.  (*See generally* ECF No. 22; ECF No. 7, ¶¶ 6–13; ECF No. 8, ¶¶ 6–13.)

A "written contract presumes that there was consideration given for its execution," and in the event of written agreement, Defendants bear the burden "to show that there was a failure of consideration." *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 185 (Tex. App. 1995) (citations omitted).  Each Guaranty notes that Navia agreed to assure S & F's financial obligations to BMO "[f]or [v]aluable [c]onsideration, the receipt and sufficiency of which is hereby acknowledged," (ECF No. 1-12, at 2–5), and Defendants have not submitted any evidence to show lack of consideration.  Therefore, there can be no question that each Agreement and Guaranty is a valid contract.

### 3.     GE, TTTS, and BMO Performed Under the Contracts

The creditors to the Agreements and Guaranties also performed under the contracts. *See Smith Int'l, Inc.*, 490 F.3d at 387 (citation omitted) (declaring that "performance . . . by the plaintiff" is an "essential element[] of a breach of contract action"); *Nielsen*, 612 N.E.2d at 529 (same).  By "financ[ing Defendants'] purchase" of the subject equipment, GE, TTS, and BMO completed the only obligations imposed upon them by the Agreements.  (ECF No. 20-1, ¶ 9(a)–(h)); *see GE Com. Dist. Fin. Corp. v. E.D.'s Small Engine Repair, Inc.*, No. 13-1789, 2014 WL 587440, at *2 (D. Md. Feb. 14, 2014) ("[P]laintiff performed its obligations under the Security Agreement at issue by financing [D]efendant's purchase of inventory . . . .").  And the Guaranties note that BMO had already provided Navia with "valuable[, sufficient] consideration"—BMO's only duty imposed by the Guaranties.  (ECF No. 1-12, at 2–5.)

### 4.     Defendants Breached the Contracts

Defendants breached the Agreements and Guaranties. *See Smith Int'l, Inc.*, 490 F.3d at 387 (citation omitted) (stating that "breach of the contract by the defendant" is an "essential element[] of a breach of contract action"); *Nielsen*, 612 N.E.2d at 529 (same).  BMO Litigation Specialist Sheila Aschenbrenner states in her declaration that, "according to [BMO's] books and records," Navia failed to make payments on the First, Second, and Third Agreements; S & F failed to make payments on the Fourth, Fifth, Sixth, Seventh, and Eighth Agreements; and, "Defendants have failed to make all subsequent payments due."  (ECF No. 20-1, ¶¶ 35–36, 38; *see* ECF No. 20-1, ¶¶ 31–32 (describing BMO's recordkeeping protocol).)  Navia also failed to fulfill his obligation as guarantor for the Fourth, Fifth, Six, Seventh, and Eighth Agreements because "[u]nder the Guaranties, Navia [wa]s also obligated to pay [BMO] all amounts due to [BMO] under the S & F Agreements," and Navia failed to pay the amounts due on S & F's

Agreements. (ECF No. 20-1, ¶¶ 33, 36–38.) BMO attaches two letters—the first to both Navia and S & F and the second to Navia—notifying the recipients that they had defaulted on their Agreements. (ECF No. 1-13, at 2–3.) Defendants provide no evidence of their own to create a dispute of fact as to BMO's proffered evidence. (*See generally* ECF No. 22.)

Therefore, the record shows that Navia breached the First, Second, and Third agreements; that S & F breached the Fourth, Fifth, Sixth, Seventh, and Eighth Agreements; and that Navia breached his Guaranties to pay the amounts due under the Fourth, Fifth Sixth, Seventh, and Eighth Agreements.

### 5.    BMO Suffered Damages as a Result of Defendants' Breach

Finally, BMO has shown damages as a result of Defendants' failure to make payments on the Agreements and Guaranties. *See Smith Int'l, Inc.*, 490 F.3d at 387 (citation omitted) (declaring that "damages sustained by the plaintiff" is an "essential element[] of a breach of contract action"); *Nielsen*, 612 N.E.2d at 529 (providing the elements of breach of contract, including that there must be "resultant injury to the plaintiff"). To calculate the damages it suffered as a result of Defendants' breach, BMO:

    (1) determined the amount due on the principal after accelerating the Agreements;

    (2) calculated the proceeds obtained through resale of the collateral in each Agreement;

    (3) subtracted outstanding interest and fees from the proceeds;

    (4) subtracted the amount left from the proceeds (after interest and fees) from the principal; and,

    (5) added interest due.

(*See* ECF No. 20-1, ¶¶ 49–101.) Where the resale resulted in a surplus, BMO noted that that surplus would "be credited against the attorneys' fees and costs incurred by [BMO] in pursuing

this action and otherwise enforcing its rights under the Agreements." (ECF No. 20-1, ¶ 74.)

BMO concluded that Defendants owe it at least $377,407.77 ($131,699.90 from Navia, and

$245,707.87 from S & F and Navia), not including attorneys' fees, expenses, and additional costs

of collection. (ECF No. 20-1, ¶ 100.) Defendants again fail to present any evidence to

contradict BMO's damage calculations.[11]

Indeed, Defendants fail to present *any* "evidence such that reasonable jurors could find by

a preponderance of the evidence for" Defendants. *Sylvia Dev. Corp.*, 48 F.3d at 818 (internal

quotation marks and citation omitted); (*see generally* ECF No. 22). Because the relevant

evidence before the Court is undisputed, BMO has established the necessary elements for

Defendants' breach of contract as each of the Agreements and Guaranties. As such, the Court

will grant BMO's Motion for Summary Judgment as to Counts III and IV.

**B.     Injunctive Relief Is Appropriate to Enforce the Sixth Agreement Because
         BMO Establishes Imminent Irreparable Harm and Lack of Remedy at Law**

Although BMO primarily seeks damages, it also requests that this Court grant it a

permanent injunction to cure BMO's inability to locate or repossess the Retained Collateral.

(ECF No. 20, at 15–17.) Specifically, BMO seeks an Order requiring "Defendants, their officers,

agents, servants, employees, and attorneys, and any other person or entity who is in active

concert or participation with Defendants" to cease using the Retained Collateral and to make it

---

[11] The Court has independently confirmed BMO's totals based on its own review of
BMO's documentation. However, the Court notes that certain discrepancies appear to exist
between BMO's accounting documents and Aschenbrenner's declaration. For example, the
declaration states that "as of March 15, 2021, the interest due and owing under the Fifth
Agreement was $1,989.09." (ECF No. 20-1, ¶ 78.) However, BMO's documents appear to
reach a total of $2,198.61. (ECF No. 20-2, at 6.) Ultimately, the total amounts due listed in both
the declaration and BMO's Memorandum in Support match what appear to be the correct sums
based on BMO's accounting documents: $131,699.90 under the first three Agreements,
$245,707.87 under the Fourth through Eighth Agreements, and $377,407.77 under all eight. (*See*
ECF No. 20-2.)

available for repossession.  (ECF No. 27-1, ¶ 7(f).)  BMO states that it "shall credit the net

proceeds of any disposition of the Collateral to the judgment amount . . . in a manner consistent

with the Agreements (as defined in the Verified Complaint).  Defendants shall remain liable for

money damages up to the amount of any deficiency remaining after such disposition(s)."  (ECF

No. 27-1, ¶ 7(h).)

### 1.        <u>Legal Standard:  Injunctive Relief</u>

Under Texas law,[12] a Court may grant permanent injunctive relief "upon a showing of (1)

the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of

irreparable injury, and (4) the absence of an adequate remedy at law."  *Risner v. Harris Cnty.*

*Republican Party*, 444 S.W.3d 327, 339 (Tex. App. 2014).  "[A] court determining the

appropriateness of a permanent injunction should balance the competing equities, including the

public interest."  *Id.*

### 2.        <u>S & F's and Navia's Failure to Make Payments on the Sixth Agreement Is a Wrongful Act</u>

The first prong in the test for injunctive relief—"the existence of a wrongful act"—is

satisfied.  *Risner*, 444 S.W.3d at 339.  S & F undisputedly failed to make payments on the Sixth

---

[12] The Sixth Agreement, under which BMO seeks permanent injunctive relief, contains a choice-of-law provision indicating that "all credit or other financial accommodations extended by [BMO] under this Agreement shall be deemed extended from and subject to the laws of the State of Texas."  (ECF No. 1-6, at 5.)  Thus, because Defendants have not challenged the choice-of-law clauses under any of the Agreements, the Court will apply Texas law to BMO's request for permanent injunctive relief.  *Cf. Lord & Taylor, LLC v. White Flint, L.P.*, 780 F.3d 211, 215 (4th Cir. 2015) (citing *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988), for the proposition that the "*Erie* doctrine requires courts to apply state substantive law to a request for permanent injunctive relief in diversity cases"); *see also Williams v. Rigg*, 458 F. Supp. 3d 468, 478 n.3 (S.D.W. Va. 2020) (explaining that "the grant of a *preliminary* injunction is subject to federal standards," while a court's consideration of a *permanent* injunction involves state substantive law (alteration omitted) (emphasis added)).

Agreement—and Navia failed to pay under the Guaranties—and that constitutes a wrongful act appropriate for the issuance of an injunction. (ECF No. 20-1, ¶¶ 36–38.)

### 3.   BMO Faces Imminent Irreparable Harm

BMO faces imminent irreparable harm absent an injunction for two reasons. First, based on the current record, S & F and Navia appear unlikely to satisfy a monetary judgment levied against them.[13]  As discussed above, S & F has defaulted on five loan agreements, and Navia has defaulted on three loan agreements and four other Guaranties. (ECF No. 20-1, ¶¶ 33–38.)  And the record shows that they have failed to make any further payments on those Agreements or Guaranties since defaulting. (ECF No. 20-1, ¶ 38.)  Moreover, "[d]espite [BMO's] demand," Defendants have either "failed [or] refused to surrender possession of the Retained Collateral," similarly indicating that Defendants would be unable or unwilling to pay damages. (ECF No. 20-1, ¶ 43.)

Second, Defendants have been unwilling to communicate with their Counsel.  In Defendants' Response to BMO's Motion for Summary Judgment, Defendants' Counsel detailed his many efforts to contact Defendants about BMO's pending Motion for Summary Judgment, noting that "[t]he last communication Defendants' [C]ounsel received from Defendants was on January 29, 2021." (ECF No. 22, ¶ 8.)  And after this Court entered two Orders "notif[ying] the parties that it [was] prepared to rule on the Motion [for Summary Judgment] and will consider granting a permanent injunction against" Defendants absent Defendants' objection, (ECF No. 25, at 1), Defendants' Counsel again responded that he mailed Defendants a copy of this Court's Order but received no response, (ECF No. 26, at 2; ECF No. 28, at 1).  Defendants' refusal or

---

[13] The Court notes that Defendants' inability to pay supports both the irreparable harm and inadequacy of remedy at law elements.

inability to participate in this pending litigation likewise reflects poorly on their current ability to satisfy a monetary judgment.

In short, BMO "has raised sufficient doubt as to whether Defendants would be able to satisfy [a monetary] judgment.  The inability to collect on a judgment would destroy [BMO's] right to enforce" the Sixth Agreement.  *Int'l Fid. Ins. v. Waterfront Grp. NC, LLC*, No. 3:11cv116, 2011 WL 4715155, at *4 (W.D.N.C. Oct. 6, 2011); *see also Harris v. Siegel*, 68 S.W.2d 330, 331 (Tex. App. 1934) (implying that "allegation[s] that appellees are insolvent, or unable to respond in damages" support a grant of injunctive relief).  BMO thus has demonstrated that it faces imminent irreparable harm absent an injunction directing Defendants to return or to make available the Retained Collateral.

### 4.    BMO Has Established a Lack of an Adequate Remedy at Law

BMO also lacks an adequate remedy at law to enforce the Sixth Agreement for two reasons.  First, Defendants' likely inability pay a monetary judgment—in addition to evincing irreparable harm—also undermines BMO's remedy at law.  Second, in Texas, "[a]n injunction will not issue if damages are . . . subject to measurement by an ascertainable pecuniary standard."  *Fuentes v. Union de Pasteurizadores de Juarez Sociedad Anoninma de Capital Variable*, 527 S.W.3d 492, 500 (Tex. App. 2017).  Here, the damages owed under the Sixth Agreement are not readily ascertainable.

BMO points out that "[d]espite its express demand, . . . Defendants remain in possession of and have failed or refused to surrender" the Retained Collateral.  (ECF No. 20-1, ¶ 29.)  And by its nature, "[t]he Retained Collateral"—a shipping vehicle—"depreciates and deteriorates as a result of its continued use."  (ECF No. 20-1, ¶ 46.)  Therefore, "[t]he exact amount of damages for Defendants' . . . use of the Retained Collateral and the amount of damages due to the

depreciation of the Retained Collateral would be difficult if not impossible to ascertain" unless a party can inspect the vehicle, which BMO has been unable to do. (ECF No. 20-1, ¶ 46.) BMO thus lacks an adequate remedy at law to exercise its rights under the Sixth Agreement.

### 5.      The Equities Favor an Injunction

Finally, the equities strongly support an injunction. In the Sixth Agreement, S & F and BMO specifically agreed that the BMO reserved "the right to require [S & F] to assemble the Equipment and deliver it to [BMO] at a place to be designated by [BMO] and to enter any premises where the Equipment may be without judicial process and take possession thereof." (ECF No. 1-2, at 4.) And in the Guaranties, Navia agreed that S & F would "promptly and fully perform, pay[,] and discharge all of its present and future liabilities, obligations[,] and indebtedness to" BMO.[14] (ECF No. 1-12, at 2–4.) It is well settled that "it is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed[.]" *Johnson Serv. Grp., Inc. v. France*, 763 F. Supp. 2d 819, 831 (N.D. Tex. 2011) (quoting *AmeriSpec, Inc. v. Metro Inspection Servs., Inc.*, No. 3:01cv946, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001) (second alteration in original)). And the Court does not find that significant hardship will result to Defendants if the Court simply enforces the terms of contracts to which they expressly agreed. Thus, balancing the equities, the Court concludes that injunctive relief as to the Retained Collateral is appropriate.

---

[14] Even if the Guaranties do not specifically require Navia to *return* or *make available* the Retained Collateral, the Court finds that Navia—as the sole member of S & F, and who signed the Sixth Agreement on behalf of S & F—is at the very least "in active concert or participation with" S & F, and can thus be bound under an injunction pursuant to Federal Rule of Civil Procedure 65. Fed. R. Civ. P. 65(d)(1)(2)(C); (*see* ECF No. 1-6, at 6; ECF No. 7, ¶ 2; ECF No. 8, ¶ 2).

**C.      Because the Court Will Grant Damages Pursuant to Counts III and IV, and the Injunctive Relief Requested in Count I, the Court Will Dismiss as Moot Counts II and V of the Verified Complaint**

Finally, the Court will dismiss as moot Counts II and V of the Verified Complaint. BMO requests specific performance (Count II) and detinue (Count V) in the alternative to granting its request for monetary damages and an injunction. (ECF No. 1, at 12, 14.) Because the Court will grant summary judgment in BMO's favor on Counts III and IV and will grant injunctive relief under Count I, BMO's alternative requests for specific performance and detinue under Counts II and V are moot. Therefore, the Court will dismiss Counts II and V of the Verified Complaint and direct the Clerk to close this matter.

### IV.  Conclusion

For the foregoing reasons, the Court will grant the Motion for Summary Judgment as to Counts III and IV and grant BMO's request for injunctive relief under Count I. (ECF No. 19.) The Court will deny as moot Counts II and V of the Verified Complaint.

An appropriate Order shall issue.

Date:  3 -10 - 2022                                           _____
Richmond, Virginia                                           M. Hannah Lauck
                                                             United States District Judge